IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:17-CV-00096-RJC-DSC

| | |
|---|---|
| **BLAIR COLEMAN,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) ) ) |
| **HEATHER WILSON, Secretary of the Air Force,** | ) ) ) ) |
| **Defendant.** | ) ) |

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on the "United States' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the Alternative, Motion for Summary Judgment," Doc. 38, filed on February 22, 2021, and the parties' associated briefs and exhibits.

The matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>denied</u> and Defendant's Motion for Summary Judgment be <u>granted</u> as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Blair Coleman seeks injunctive relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 <u>et seq.</u>, to correct his discharge records to reflect medical retirement from the United States Air Force by reason of permanent disability. Doc. 1 at 14. Coleman served as an active-duty staff sergeant and witnessed service members being severely injured and killed during a mortar attack in Iraq. <u>Id.</u> at 15. As a result of the trauma he experienced from the

attack, he was entered into the Disability Evaluation System process. Id. at 6. His claim was forwarded to an Informal Physical Evaluation Board (IPEB) to determine whether his diagnosis of anxiety disorder rendered him unfit for military service. Id. On September 9, 2005, the IPEB concluded that Coleman was unfit for military service and assigned him a disability rating of ten percent. Id. at 8.

On October 24, 2005, he was medically separated from the Air Force. Id. at 8. Based upon his ten percent disability rating, Coleman was not entitled to continuing retirement benefits including health care, because his disability rating at separation was less than thirty percent. Id. On March 15, 2006, Veterans Affairs ("VA") assigned him a disability rating of thirty percent effective October 25, 2005. Id. at 9. He began receiving disability compensation benefits from the VA. Id.

In 2008, Congress passed the National Defense Authorization Act. See 10 U.S.C. § 1554. The Act mandated retroactive consideration of disability determinations for members of the armed forces who were separated due to a medical condition with a disability rating of twenty percent or less between September 11, 2001 and December 31, 2009. Id. The Act created the Physical Disability Board of Review ("PDBR") to determine whether the Veterans Affairs Schedule for Rating Disabilities ("VASRD") guideline codified at 38 C.F.R. § 4.129 (mental disorders due to traumatic stress) applied to cases like Coleman's. Doc. 1-1 at 2.

On April 16, 2011, Coleman requested a hearing before the PDBR, stating "I should have been medically retired. I was a career airman planning on making the Air Force my career. I feel 10% is unfair considering I'm still suffering from symptoms." Doc. 1 at 11; Doc. 1-1 at 1; Doc. 10 at 2. On May 17, 2012, the PDBR issued its decision, determining pursuant to VASRD § 4.129 that Coleman should have been placed on the Temporary Disability Retired List

2

("TDRL") for six months at a fifty percent disability rating beginning October 24, 2005 rather than being permanently discharged on that date. Doc. 1-1 at 4. The Board concluded that he would have been permanently discharged on April 24, 2006 after six months on the TDRL. Id. The PDBR affirmed the ten percent disability rating. Id. Coleman did not undergo a follow-up examination before his removal from the TDRL. Doc. 1 at 11-12.

On April 8, 2014, the VA revised his diagnosis to Post-Traumatic Stress Disorder and increased his disability rating to fifty percent effective February 8, 2013. Id. at 8.

On June 8, 2017, he filed this action to challenge the PDBR's decision under the APA. Doc. 1. The Court granted the United States' Motion to Dismiss for lack of subject matter jurisdiction, finding that the "true nature of Plaintiff's Complaint takes a monetary form." Doc. 19 at 5. On May 30, 2018, Coleman appealed that Order to the Fourth Circuit. Docs. 22, 24. After Coleman filed a Declaration "waiving any right to military retirement pay," Doc. 39-1 at 2, the Fourth Circuit remanded the case to "reconsider its jurisdictional ruling in light of the Coleman Affidavit filed on appeal." Doc. 25 at 1; Doc. 25-1.

On February 22, 2021, the Government filed a Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the Alternative, Motion for Summary Judgment. Doc. 38.

## II.    DISCUSSION

### A.    Standard of Review – Rule 12(b)(1)

Federal district courts have limited jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). "They possess only that power authorized by Constitution and statute." Randall v. United States, 95 F.3d 339, 344 (4th Cir. 1996). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." Vuyyuru, 555 F.3d at 347.

Federal subject matter jurisdiction is a threshold issue for the Court, Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999), and a challenge to subject matter jurisdiction is properly considered on a motion under Fed. R. Civ. P. 12(b)(1). Clinton v. Brown, No. 3:15-cv-0048-FDW-DSC, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015).

The burden of establishing federal subject matter jurisdiction rests on the party asserting it. See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). The moving party should prevail on a motion to dismiss for lack of federal jurisdiction if "material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991).

In determining whether a factual basis for subject matter jurisdiction exists for purposes of deciding a Rule 12(b)(1) motion to dismiss, the court is to regard allegations in the pleadings as "mere evidence on the issue," and may consider evidence outside the pleadings without converting the motion to one for summary judgment. Id. at 768; Fed. R. Civ. P. 12(d). "A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams, 697 F.2d at 1219 (citations omitted).

A service member may be entitled to retirement benefits or medical severance pay if he becomes disabled while on active duty. 10 U.S.C. §§ 1201- 1221. The Secretary of each service is authorized to place members in disability retirement status upon a finding that the member was unable to perform military duties by reason of disability while on active duty. 10 U.S.C. § 1201. A member is placed on the TDRL for a period not to exceed five years if the disability is not considered permanent. 10 U.S.C. § 1210. If the disability is considered permanent and rated as thirty percent disabling or higher, the member is placed in permanent retired status. 10 U.S.C. §

1201. If rated less than thirty percent, the member is only entitled to medical severance pay. 10 U.S.C. § 1203

   B.   **The Court has subject matter jurisdiction over Coleman's Complaint.**

Coleman challenges the disability rating of ten percent that he received upon his discharge from the Air Force in 2005. See Doc. 10 at 2. The Government asserts that Coleman is bringing a monetary claim and thus, the Tucker Act, 28 U.S.C. § 1491, provides an adequate remedy. But Coleman invokes the APA, 5 U.S.C. § 706, as the basis for subject matter jurisdiction.

The Fourth Circuit explained the relationship between the Tucker Act and the APA in Randall v. United States:

> The interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction. Determining the proper statutory framework for the district court's jurisdiction in this case is critical because it affects the appellate jurisdiction of this court. **The United States Court of Appeals for the Federal Circuit, not the regional courts of appeals, has exclusive jurisdiction over appeals in cases based "in whole or in part" on the Tucker Act.** 28 U.S.C. § 1295(a)(2). The provision of 28 U.S.C. § 1295(a)(2) is mandatory and cannot be waived by the parties, because it relates to the subject matter jurisdiction of this court.

95 F.3d 339, 346 (4th Cir. 1996) (emphasis added) (internal citations omitted). The APA limits district court jurisdiction to claims for "relief other than money damages," and "for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. The Tucker Act, like the APA, waives the United States' sovereign immunity from suit. 28 U.S.C. § 1491. Under the Tucker Act, the U.S. Court of Federal Claims has exclusive jurisdiction for monetary claims against the United States exceeding $10,000. See 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). See also Randall, 95 F.3d at 346–47.

But the Tucker Act only precludes APA judicial review "when plaintiff has an adequate remedy by suit under the Tucker Act." Randall, 95 F.3d at 346. The Supreme Court has

5

recognized a "strong presumption that Congress intends judicial review of agency action," so that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Bowen v. Michigan Acad. of Fam. Physicians, 476 U.S. 667, 670 (1986).

Therefore, to have jurisdiction over an APA claim, the court must find that (1) Coleman seeks relief other than money damages and (2) that there is no other adequate remedy in a court, including the U.S. Court of Federal Claims. See Hoffler v. Hagel, 122 F. Supp. 3d 438, 442 (E.D.N.C. 2015), aff'd in part, dismissed in part sub nom. Hoffler v. Mattis, 677 F. App'x 119 (4th Cir. 2017) (citing 5 U.S.C. §§ 702, 704; Bowen v. Massachusetts, 487 U.S. 879, 891 (1988); James v. Caldera, 159 F.3d 573, 578–79 (Fed. Cir. 1998)).

a. **Coleman seeks injunctive relief.**

In determining whether Coleman states a claim under the Tucker Act, the court looks to the "essence of his complaint." Hoffler v. Hagel, 122 F. Supp. 3d 438, 443 (E.D.N.C. 2015) (quoting Randall, 95 F.3d at 347) (citing James, 159 F.3d at 579) ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must look to the true nature of the action in determining the existence or not of jurisdiction.") (internal quotation omitted)). As for the first requirement, the Government contends that Coleman seeks monetary relief.

Based upon Coleman's declaration and the Complaint, the Court finds that the essence of his Complaint is for injunctive relief to alter or amend his military records. See Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768 (explaining that the court may consider evidence outside the pleadings without converting the motion to one for summary judgment). In

his Declaration, Plaintiff specifically waived "any right to military retirement pay." Doc. 39-1 at 2. The injunctive relief sought would make Coleman eligible to:

- participate in the "Tricare" military health insurance system;
- enter military bases and utilize amenities such as shopping at the post/base exchange;
- stay at numerous campgrounds and other military vacation destinations, such as Shades of Green at Walt Disney World Resort in Florida, Hale Koa Hotel on Waikiki Beach in Hawaii, and numerous on base hotels and lodging in Germany and Italy;
- enjoy travel privileges aboard military aircrafts;
- wear his military uniform in public; and
- have burial privileges in national cemeteries.

Doc. 39-1 at 1–2. See Smalls v. United States, 471 F.3d 186, 190 (D.C. Cir. 2006).

While injunctive relief may lead to additional benefits for Coleman and his family, the essence of his claim is for equitable relief. See Powe v. Sec'y of Navy, No. 94-1258, 1994 WL 445695, at *2 (4th Cir. 1994) ("[A] suit seeking a military discharge upgrade is not for money damages, even though an upgrade would entitle the recipient to payment for leave accrued at the time of discharge.") (citation omitted).

The Government also contends that Coleman's claim for injunctive relief is based on a money-mandating statute, 10 U.S.C. § 1201. However, he seeks correction of his records based upon 10 U.S.C. § 1554a, which the U.S. Court of Federal Claims has explicitly stated "is not a money-mandating statute." Quesada v. United States, 136 Fed. Cl. 635, 642 (2018). See also Fisher v. United States, 402 F.3d 1167, 1174–75 (Fed. Cir. 2005) (citing Sawyer v. United States, 930 F.2d 1577, 1580 (Fed. Cir. 1991)). Therefore, Coleman does not exclusively seek monetary relief that falls within the jurisdiction of the U.S. Court of Federal Claims.

The Court finds that Coleman has satisfied the first requirement for APA jurisdiction. See Smalls, 471 F.3d at 190 (stating that "the phrase 'retirement benefits' connotes a host of benefits to which no monetary value can be attached,"); Nieves v. McHugh, 111 F. Supp. 3d 667, 674–

675 (E.D.N.C. 2015) (stating that a request for placement on retirement status is request for equitable relief pursuant to the APA).

  **b.**  **There is no other adequate remedy in a court.**

  The Government contends that Coleman has an adequate remedy under the Tucker Act and thus jurisdiction lies in the U.S. Court of Federal Claims.

  But the Tucker Act only "authorize[s] courts to award injunctive relief in limited circumstances, when such relief is necessary to provide an entire remedy and when the injunction is 'an incident of and collateral to' an award of monetary relief." Randall, 95 F.3d at 46–47 (citing 28 U.S.C. § 1491(a)(2)). Given that Coleman waived his right to military retirement pay (Doc. 39-1 at 2), the injunctive relief, if granted, would not be an "incident of and collateral to" an award of monetary relief. See 28 U.S.C. § 1491(a)(2) ("[T]he court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.").

  The Court acknowledges that a thirty percent disability rating may entitle Coleman to monthly retirement benefits. But there is no guarantee that he will be entitled to additional monthly payments from the Government, especially since he waived his right to retirement pay. See Fulbright v. McHugh, 67 F. Supp. 3d 81, 85 (D.D.C. 2014) ("Qualifying for disability retirement, however, is no small task" because "military regulations establish a complex web of procedures for obtaining disability benefits after leaving active service."). It is well-settled that veterans may not receive both disability compensation and military retirement pay outside of limited exceptions, 38 U.S.C. § 5304(a), and any veteran entitled to both must elect which of the two he receives. See 38 C.F.R. § 3.750(c)(i). In light of the rules prohibiting the concurrent

receipt of VA disability and military retirement pay, the Court finds that Coleman is not exclusively seeking monetary relief. See Randall, 95 F.3d at 347 (affirming the district court's finding that Little Tucker Act did not provide jurisdiction because the plaintiff's "claims were primarily for equitable relief," such that the retroactive promotion sought by the plaintiff was not available in the U.S. Court of Federal Claims because it was "not incident of, or collateral to, a monetary award."). Therefore, he does not have an adequate remedy in the U.S. Court of Federal Claims.

### c. Coleman's claim is not barred by the six-year statute of limitations in 28 U.S.C. § 2501.

Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The Federal Circuit has held that a cause of action for military disability benefits accrues when a service member seeks and is denied disability benefits from a board competent to grant such benefits – either a physical disability board if the member is on active duty or from a board of correction if the member has been discharged. See Chambers v. United States, 417 F.3d 1218, 1224, 1227 (Fed. Cir. 2005); Huff v. United States Dep't of the Army, 508 F. Supp. 2d 459, 464 (D. Md. 2007) (applying the Federal Circuit's "first competent board rule"). When a service member fails to request a hearing board prior to discharge, this failure has the same effect as a refusal by the service to provide review, and the service member's cause of action accrues at the time of discharge. Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990). Thus, once a member's military disability retirement claim accrues, he must bring the claim within six years from the date of accrual. 28 U.S.C. § 2501.

Here, an Informal Physical Evaluation Board considered Coleman's claim for disability benefits in September 2005, prior to his discharge from the Air Force. See Doc. 8 at 2–3. The

9
Case 5:17-cv-00096-RJC-DSC    Document 45    Filed 04/16/21    Page 9 of 19

board considered the question of Coleman's fitness for duty while he was still serving and determined a ten percent disability rating was appropriate. See Doc. 8 at 3. See also Miller, 361 F.2d at 250. Coleman waived his right to a formal physical-evaluation-board hearing and instead agreed with the board's findings and recommended disposition. Therefore, under the "date of discharge" rule in Miller and Real, the statute of limitations accrual date for Coleman's Tucker Act claim was April 24, 2006 — the day he was discharged.

The Court concludes that the statute of limitations ran on any claim brought under the Tucker Act in April 2012. But, as discussed supra, Coleman is not bringing a claim under the Tucker Act here. He is seeking injunctive relief and judicial review of a final agency action. Notably, the Tucker Act "does not itself provide the substantive cause of action; instead, a plaintiff must look elsewhere for the source of substantive law on which to base a Tucker Act suit against the United States." Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (internal citations omitted). While Coleman could have filed a Tucker Act claim for money damages based on retirement pay and still availed himself of permissive board (such as the PDBR) review, the Court cannot weigh in on his choice of remedy. Martinez, 333 F.3d at 1304 (noting that the Federal Circuit has "long held that, in Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit."). The Court finds that Coleman's claim is not barred by the statute of limitations.

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss be denied.

C. **Standard of Review – Rule 56**

Federal Rule of Civil Procedure 56(a) provides:

A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense—on which summary judgment is sought. The court

> shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the non-moving party." Vannoy v. Fed. Rsrv. Bank of Richmond, 827 F.3d 296, 300 (4th Cir. 2016) (quoting Libertarian Party of Va v. Judd, 718 F.3d 308, 313 (4th Cir. 2013)). "A fact is material if it might affect the outcome of the suit under the governing law." Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the evidence and any inferences therefrom in the light most favorable to the non-moving party. See Tolan v. Cotton, 572 U.S. 650, 657 (2014); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court applies "the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the non-moving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 570 (4th Cir. 2015) (quoting Tolan, 572 U.S. at 660). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Id. at 568-69 (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." Id. at 569 (citing Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

### D. The PDBR's decision was not arbitrary or capricious.

The decision of the PDBR is a final agency action subject to judicial review under the APA. See 5 U.S.C. § 701, et seq.; Chappell v. Wallace, 462 U.S. 296, 303 (1983). A final agency action may be set aside only if it is "arbitrary, capricious or not based on substantial evidence." 5 U.S.C. § 706(2). The reviewing court determines whether an agency action was "arbitrary and capricious" as a matter of law. See 5 U.S.C. § 706(2)(A); Chan v. U.S. Citizenship and Immigr. Servs. 141 F. Supp. 3d 461, 464 (W.D.N.C. 2015) (explaining that the agency resolves "factual issues to arrive at a decision that is supported by the administrative record" and the district court determines "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review") (internal citations and quotation marks omitted).

To comply with the APA, the "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Sierra Club v. Dep't of the Interior, 899 F.3d 260, 293 (4th Cir. 2018) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Agency action is arbitrary and capricious when the agency fails to consider "an important aspect of the problem," provides an explanation for its decision that contradicts the evidence before it or "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Roe v. Dep't of Def., 947 F.3d 207, 220 (4th Cir. 2020) (quoting State Farm, 463 U.S. at 43).

Review is "highly deferential, with a presumption in favor of finding the agency action valid." Ohio Valley Env't Coalition v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009) (citation omitted). The court "may not supply a reasoned basis for the agency's action that the agency itself has not given." See Roe, 947 F.3d at 220 (quoting Bowman Transp., Inc. v.

Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285–86 (1974)). Where the agency has examined the relevant data and provided an explanation that includes "a rational connection between the facts found and the choice made," deference is due. Ohio Valley, 556 F.3d at 192. The court does not re-weigh the evidence and must uphold a decision that "was supported by substantial evidence." Portner v. McHugh, 395 Fed. App'x. 991, 992 (4th Cir. 2010) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Platone v. U.S. Dept. of Labor, 548 F.3d 322, 326 (4th Cir. 2008) (citation omitted).

The court considers the record before the agency at the time the agency issued its decision and "affidavits not contained in the agency record . . . where 'there was such failure to explain administrative action as to frustrate effective judicial review.'" Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv., 707 F.3d 462, 467–68 (4th Cir. 2013) (quoting Camp v. Pitts, 411 U.S. 138, 142–43 (1973)). Because judicial review of the agency decision is limited to review of the administrative record, "there can be no genuine issue of material fact in an APA action[.]" Callaway Golf Co. v. Kappos, 802 F. Supp. 2d 678, 685 (E.D. Va. 2011). Summary judgment is thus the mechanism for determining "as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Chan, 141 F. Supp. 3d at 464 (W.D.N.C. 2015) (citation omitted).

Defendant contends that the decision of the PDBR to deny Coleman's request for a thirty percent disability rating and medical retirement was not arbitrary and capricious. Coleman asserts the PDBR was arbitrary and capricious in its decision because it failed to: (1) consider evidence demonstrating that his PTSD worsened between the time of his original discharge and the date he was removed from the TDRL and (2) order a physical examination pursuant to

VASRD § 4.129 following his release from the TDRL to determine how his condition had changed from his original separation date to the time he was released from the TDRL.

In assessing the accuracy and fairness of disability ratings, the PDBR is to "[r]eview the PEB record of findings and the combined disability rating decisions regarding the specifically military unfitting medical conditions with respect to the covered individual." Doc. 39-2 at 9. The Secretary of the Air Force must determine what information is required for PDBR review, including but not limited to medical records. Id. at 7. The PDBR is required to consider retroactive application of VASRD § 4.129. 38 C.F.R. § 4.129 provides that:

> when a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted.

Here, the PDBR properly applied § 4.129. Doc. 1-1 at 2. The Board noted that "neither the military psychiatrists [nor] the VA C&P examiner diagnosed PTSD" and that "the VA elected not to apply § 4.129 in its rating decision." Id. Nonetheless, the PDBR determined there was sufficient evidence to support that "a highly stressful event severe enough to bring about the Veteran's release from active military service did occur," such that application of § 4.129 was appropriate. Id. In assigning a ten percent disability rating at the end of the TDRL period, the Board considered the MEB psychiatric examination performed two months prior to separation and the VA Psychiatric compensation and pension evaluation performed four months after separation. Id. Both documents "occurred close to separation and [were] the only proximate documents available for review." Id.

Coleman contends that the PDBR erred by not ordering a physical examination following his release from the TDRL and "improperly reduced his disability rating from the statutorily

required 50% TDRL rating to 30% without conducting such an examination." Doc. 1 at 13. But the plain language of § 4.129 does not require a physical examination – only an "examination" before release from the TDRL. See 38 C.F.R. § 4.129; Petri v. United States, 104 Fed. Cl. 537, 555 (2012).

While not binding authority, the U.S. Court of Federal Claims decision in Petri is instructive here. 104 Fed. Cl. 537 (2012). In Petri, a former Air Force member sought review from the PDBR after he was separated with a disability rating of ten percent due to PTSD and subsequently rated as fifty percent disabled due to PTSD by the VA. Id. at 544. The PDBR recommended that Petri's records be corrected to reflect a six-month placement on the TDRL followed by separation with a disability rating of ten percent. Id. at 545–46. Because the PDBR did not actually place him on the TDRL but instead corrected his records to reflect TDRL placement, the court rejected plaintiff's argument that the PDBR should have ordered a physical examination in 2010 before correcting his records to remove him from the TDRL retroactively. Id. at 552, 557. The court held that the PDBR "acted reasonably" and not "arbitrarily or capriciously" in assigning a permanent disability rating of ten percent "without a hearing and without a new physical or mental examination in 2010." Id. at 558–62.

As in Petri, the PDBR was not required to order a physical examination before Coleman's release from the TDRL. The Board examined the evidence available at the time – the MEB psychiatric examination created two months before Coleman's separation and the VA psychiatric compensation and pension evaluation created four months after his separation. Nothing more was required. The PDBR satisfied § 4.129. As the court in Petri acknowledged, a 2011 physical examination would not have reflected Coleman's state of health six months after his 2005 separation, the time period pertinent for the 2011 PDBR's determination of a permanent

15

Case 5:17-cv-00096-RJC-DSC    Document 45    Filed 04/16/21    Page 15 of 19

required 50% TDRL rating to 30% without conducting such an examination." Doc. 1 at 13. But the plain language of § 4.129 does not require a physical examination – only an "examination" before release from the TDRL. See 38 C.F.R. § 4.129; Petri v. United States, 104 Fed. Cl. 537, 555 (2012).

While not binding authority, the U.S. Court of Federal Claims decision in Petri is instructive here. 104 Fed. Cl. 537 (2012). In Petri, a former Air Force member sought review from the PDBR after he was separated with a disability rating of ten percent due to PTSD and subsequently rated as fifty percent disabled due to PTSD by the VA. Id. at 544. The PDBR recommended that Petri's records be corrected to reflect a six-month placement on the TDRL followed by separation with a disability rating of ten percent. Id. at 545–46. Because the PDBR did not actually place him on the TDRL but instead corrected his records to reflect TDRL placement, the court rejected plaintiff's argument that the PDBR should have ordered a physical examination in 2010 before correcting his records to remove him from the TDRL retroactively. Id. at 552, 557. The court held that the PDBR "acted reasonably" and not "arbitrarily or capriciously" in assigning a permanent disability rating of ten percent "without a hearing and without a new physical or mental examination in 2010." Id. at 558–62.

As in Petri, the PDBR was not required to order a physical examination before Coleman's release from the TDRL. The Board examined the evidence available at the time – the MEB psychiatric examination created two months before Coleman's separation and the VA psychiatric compensation and pension evaluation created four months after his separation. Nothing more was required.  The PDBR satisfied § 4.129. As the court in Petri acknowledged, a 2011 physical examination would not have reflected Coleman's state of health six months after his 2005 separation, the time period pertinent for the 2011 PDBR's determination of a permanent

disability. 104 Fed. Cl. at 558. While the court in Cook v. United States, 123 Fed. Cl. 277 (2015) declined to follow Petri, Cook is neither binding nor persuasive authority. Accordingly, the Court finds that the PDBR did not act arbitrarily or capriciously in assigning a permanent disability rating of ten percent without ordering a physical examination before Coleman's release from the TDRL.

Moreover, Coleman contends the PDBR failed to consider the timing of the VA's rating decision or the "severity of [his] condition at the time of his permanent disposition from the military." Doc. 41 at 17. But there is substantial evidence that the PDBR considered that decision. Under VASRD § 4.130, a ten percent disability rating is appropriate where there is

> occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

38 C.F.R. § 4.130. A thirty percent disability rating is appropriate where there is

> occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

38 C.F.R. § 4.130.

Here, the VA psychiatric compensation and pension evaluation noted that Coleman enjoyed his job and was "doing fairly well," from which the PDBR could conclude that his work efficiency had not decreased on a day-to-day basis. Doc. 1-1 at 3. His social functioning also appeared to be largely unaffected by his symptoms. Id. He was able to go out to eat and "get out socially," though he was a "little nervous." Id. These subjective descriptions are consistent with "mild or transient symptoms" and occupational and social impairment only during periods of significant stress as the PDBR found. Doc. 44 at 19. While the Board noted that "social and

occupational impairment consistent with a 30% evaluation [] could be surmised from some of the documented symptoms at the time of the post separation C&P examination," it recommended ten percent based upon his "generally intact interpersonal and occupational functioning with treatment." Doc. 1-1 at 3–4.

Although the VA considered the same evidence and concluded that Coleman merited a thirty percent disability rating, the PDBR is not required to defer to the VA's determination. Doc. 1-1 at 1–2 ("[T]he VA, operating under a different set of laws (Title 38, United States Code), is empowered to compensate service connected conditions and to periodically re-evaluate said conditions for the purpose of adjusting the veteran's disability rating should the degree of impairment vary over time."). The Board noted that its recommendation was "based on the severity of the condition at the time of the permanent disposition and not based on possible future worsening." Doc. 1-1 at 4. Because the PDBR examined the relevant data and provided an explanation that demonstrates "a rational connection between the facts found and the decision made," deference is due. Ohio Valley, 556 F.3d at 192. This Court is not "empowered to substitute its judgment for that of the [PDBR]," which is precisely what Coleman asks the Court to do here. See id. See also Doc. 41 at 16 ("The PDBR should have adopted the VA's 30% disability rating instead of reducing Mr. Coleman's rating to 10 percent.").

Given that review is "highly deferential," Ohio Valley, 556 F.3d at 192, the Court defers to the expertise of the PDBR because its decision does not contradict the evidence before it and is not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Roe, 947 F.3d at 220. The Court concludes that taking the evidence in the light most favorable to Coleman, there are no genuine issues of material fact. Callaway Golf Co., 802 F. Supp. 2d at 685 (explaining that because judicial review of the agency decision is limited

17

Case 5:17-cv-00096-RJC-DSC    Document 45    Filed 04/16/21    Page 17 of 19

to review of the administrative record, "there can be no genuine issue of material fact in an APA action"). The PDBR's decision in assigning a ten percent disability rating is supported by substantial evidence. See Chan, 141 F. Supp. 3d at 464 (applying summary judgment to determine "as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review").

Accordingly, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment be granted.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including all discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant's Motion to Dismiss be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the

parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED**.

Signed: April 16, 2021

David S. Cayer
United States Magistrate Judge