UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:17-cv-00096-RJC-DSC

| BLAIR COLEMAN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
|  | ) |  |
| HEATHER WILSON, | ) |  |
| Secretary of the Air Force, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** comes before the Court on the United States' Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the alternative, Motion for Summary Judgment (the "Motion") (Doc. No. 38), Plaintiff's Motion for Oral Argument on the Issue of Jurisdiction (Doc. No. 42), the Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 45), and both Parties' objections to the M&R (Doc. Nos. 16, 17). For the reasons stated herein the M&R is **ADOPTED**.

**I. BACKGROUND**

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, in addition to the background below, the Court adopts the facts as set forth in the M&R.

**A. Factual Background**

1. <u>Plaintiff's Military Service and Discharge</u>

Plaintiff served as an active-duty staff sergeant in the Air Force, where he intended to spend his career. (Doc. No. 1 ¶ 5). In 2004, while deployed in Iraq, he witnessed an airman severely

injured by a rocket attack. (*Id.* ¶¶ 20-21). Afterwards, Plaintiff began experiencing anxiety disorder. (*Id.* ¶¶ 21-23).

On March 15, 2005, Plaintiff's duty was restricted due to his anxiety disorder. (*Id.* ¶ 28). He was referred to a Medical Evaluation Board ("MEB") for possible discharge. (*Id.*). On August 12, 2005, after a medical examination (the "MEB Examination"), the MEB referred his claim to an Informal Physical Evaluation Board ("IPEB") to determine whether his diagnosis of anxiety disorder rendered him unfit for military service. (*Id.* ¶¶ 36-37). In September 2005, the IPEB concluded that Coleman was unfit for military service and recommended discharge with severance pay and a disability rating of 10%. (*Id.* ¶ 38). Plaintiff did not dispute the recommendations of the IPEB and waived his right to a formal hearing. (*Id.* ¶ 39). Thereafter, on October 24, 2005, Plaintiff was medically separated from the Air Force with a 10% disability rating due to his anxiety disorder. (*Id.* ¶ 41). Plaintiff was not entitled to retirement benefits, including health care benefits, because his disability rating at separation was less than 30%. (*Id.*).

Afterward, Plaintiff submitted an application for disability benefits for, among other things, his anxiety disorder from the Veterans Affairs ("VA"). (*Id.* ¶¶ 43). On February 22, 2006, the VA conducted a Compensation & Pension Examination ("the VA Examination") to determine his eligibility of benefits. (*Id.* ¶ 43). The VA assigned him a disability rating of 30%, for his anxiety disorder and he began receiving disability compensation benefits from the VA.[1] (*Id.* ¶¶ 44-45).

   2. Creation of the Physical Disability Board of Review

In 2008, Congress created the Physical Disability Board of Review ("PDBR") to complete retroactive reviews of disability determinations for members of the armed forces who were

---

[1] The VA also assigned Plaintiff an additional 10% disability rating due to other, not relevant, physical injuries, for a total of 40% disability rating.

separated due to a medical condition with a disability rating of 20% or less between September 11, 2001 and December 31, 2009, and who were not eligible for retirement. (*See* 10 U.S.C. § 1554a). Upon the eligible veteran's request, the PDBR reviews the findings and decisions of the military's disability assessment, considers any evidence presented by the veteran, and determines whether a recharacterization or modification of the disability rating should be made. 10 U.S.C. § 1554a (c)-(d).

The Department of Defense Instruction establishing policies, responsibilities, and procedures for the PDBR, requires the PDBR to "(a) Compare any VA disability rating for the specifically military-unfitting condition(s) with the PEB combined disability rating; and (b) Consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the VA rating was awarded within 12 months of the former Service member's separation." (Department of Defense Instruction 6040.44 (June 27, 2008)). Additionally, the PDBR conducts reviews of the disability rating in accordance with the Veterans Affairs Schedule for Rating Disabilities ("VASRD") in effect at the time of separation. (*Id.*).

Under VASRD for mental health disorders, "[w]hen a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129. The VASRD requires at least a 30% disability rating when the veteran has "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness,

panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events)." 38 C.F.R. § 4.130. The VASRD requires a 10% disability rating when the veteran has "[o]ccupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication." *Id.*

### 3. PDBR Review of Plaintiff's Disability Rating

On April 16, 2011, Coleman filed an application for review by the PDBR, stating "I should have been medically retired. I was a career airman planning on making the Air Force my career. I feel 10% is unfair considering I'm still suffering from symptoms." (Doc. No. 1-1 at 1; Doc. No. 10 at 2). On May 17, 2012, the PDBR issued its decision. (Doc. No. 1-1).

First, the PDBR determined pursuant to VASRD § 4.129 that Coleman should have been placed on the Temporary Disability Retired List ("TDRL") for six months at a 50% disability rating beginning October 24, 2005, rather than being permanently discharged on that date. (Doc. No. 1-1 at 2). It determined he then should be permanently discharged on April 24, 2006, after six months on the TDRL. (*Id.*).

Next, the PDBR determined the 10% permanent disability rating was proper. (*Id.* at 4). The PDBR's analysis "centered on a 10% versus a 30% rating." (*Id.* at 3). It reasoned that a 30% rating "could be surmised from some of the documented symptoms at the time of the post separation [VA Examination] . . . [h]owever, . . . the [MEB Examination], commander's statement, and post separation [VA Examination] documented [Plaintiff's] generally intact interpersonal and occupational functioning with treatment, and the apparently 'mild or transient' nature of his symptoms since separation." (*Id.* at 4).

### B. Procedural Background

On June 8, 2017, Plaintiff filed this action, seeking an injunction pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*, to correct his discharge records to reflect a medical retirement by reason of permanent disability with a physical disability rating of at least 30%. (Doc. No. 1). The Court dismissed the action for lack of subject matter jurisdiction because it found the "true nature of Plaintiff's Complaint takes a monetary form" and concluded the action should have been filed in the Court of Federal Claims. (Doc. No. 19). Coleman appealed to the Fourth Circuit, where he filed for the first time a Declaration waiving "any right to military retirement pay." (Doc. No. 39-1 at 2). Based on the Plaintiff's Declaration, the Fourth Circuit remanded to this Court to "reconsider its jurisdictional ruling in light of the Coleman Affidavit filed on appeal." (Doc. No. 25 at 1).

On remand, the Defendant filed its Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the alternative, Motion for Summary Judgment, which Plaintiff opposes. (Doc. Nos. 38, 39, 41, 42, 44). The Magistrate Judge recommended that the Court deny Defendant's motion to dismiss for lack of subject matter jurisdiction in light of Plaintiff's waiver, and grant Defendant's motion for summary judgment because the PDBR decision was not arbitrary or capricious. (Doc. No. 45). Both parties objected. (Doc. No. 46 & 47).

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review

of the record may be dispensed with." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Id.*

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The Magistrate Judge concluded this Court has subject matter jurisdiction over Plaintiff's request for injunctive relief under the Administrative Procedures Act ("APA"). (Doc. No. 45). Defendant argues the Court lacks subject matter jurisdiction and that the Court of Federal Claims has exclusive jurisdiction under the Tucker Act. (Doc. No. 46).

The United States has sovereign immunity and cannot be sued without express consent. *Randall v. U.S.*, 95 F.3d 339, 345 (4th Cir. 1996). Here, the Court must examine the interplay between two federal statutes that waive sovereign immunity – the Tucker Act and the APA. *See Randall*, 95 F.3d at 345 ("[P]laintiffs in cases such as this one, challenging a decision of a board for the correction of military records, have used one of two avenues to establish federal jurisdiction: the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491; and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706."). "The interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction." *Randall*, 95 F.3d at 346.

The Tucker Act allows private parties to sue the federal government in the Court of Federal Claims for claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for

liquidated or unliquidated damages in cases not sounding in tort."[2] 28 U.S.C. § 1491(a)(1). The Tucker Act provides exclusive jurisdiction in the Court of Federal Claims for actions for more than $10,000. *Randall*, 95 F.3d at 346. The Tucker Act does not, on its face, grant the Court of Federal Claims equitable power, but it does authorize the award of injunctive relief "in limited circumstances, when such relief is necessary to provide an entire remedy and when the injunction is 'an incident of and collateral to' an award of monetary relief." *Randall*, 95 F.3d at 346-47 (citing 28 U.S.C. § 1491(a)(2)). As such, the Court of Federal Claims may provide claimants with an "entire remedy," including "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2); *see also Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991).

The APA on the other hand allows private parties to sue the federal government in district court over final agency actions. *Randall*, 95 F.3d at 346. The waiver of sovereign immunity in the APA is limited to suits seeking relief other than monetary damages. *Id.* Review under the APA is also precluded where a plaintiff has an adequate remedy under the Tucker Act. *Randall*, 95 F.3d at 346. Thus, to bring a claim under the APA a plaintiff must prove that (1) he seeks relief other than money damages, and (2) there is no other adequate remedy. 5 U.S.C. §§ 702, 704; *Hoffler v. Hagel*, 122 F. Supp. 3d 438, 442 (E.D.N.C. 2015), *aff'd in part, dismissed in part sub nom. Hoffler v. Mattis*, 677 F. App'x 119 (4th Cir. 2017) (citations omitted).

---

[2] The Tucker Act is encompassed in two statutes: 28 U.S.C. § 1491 (commonly referred to as the "Big Tucker Act") and 28 U.S.C. § 1346(a)(2) (commonly referred to as the "Little Tucker Act"). The Big Tucker Act grants exclusive jurisdiction to the United States Court of Federal Claims for claims more than $10,000. The Little Tucker Act allows for concurrent jurisdiction with the district courts for civil actions or claims against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(2); *Randall*, 95 F.3d at 346-47; Wright & Miller, *Fed. Practice & Proc.* § 3657. "[A] primary purpose of the Tucker Act is to ensure that a central judicial body adjudicates most claims against the United States Treasury." *Randall*, 95 F.3d at 346 (internal quotation marks omitted).

First, to determine whether a plaintiff seeks monetary relief, courts look to the "essence" of the complaint. *Randall*, 95 F.3d at 347. The Court previously ruled that the nature of Plaintiff's Complaint is monetary relief and belongs in front of the Court of Federal Claims, noting the Complaint specifically references that the 10% disability rating deprived Plaintiff of retirement pay. (Doc. No. 19). Now the Court must decide, at the direction of the Fourth Circuit, if the essence of Plaintiff's Complaint changed from monetary to equitable relief based on the Plaintiff's express waiver of "any right to military retirement pay." (Doc. No. 39-1 at 2).

In analogous jurisdictional issues, courts acknowledge district courts may exercise jurisdiction under the Little Tucker Act when plaintiffs waive their right to monetary relief over $10,000. *See e.g. Stone v. U.S.*, 683 F.2d 449, 454 (D.C. Cir. 1982) ("[P]laintiff's express waiver was sufficient to bring his case within the District Court's jurisdiction."); *Goble v. Marsh*, 684 F.2d 12, 13 (D.C. Cir. 1982) ("Plaintiffs whose damages exceed $10,000 may waive all claims greater than $10,000 in order to establish the jurisdiction of the District Court."); *U.S. v. Park Place Associates, Ltd.*, 563 F.3d 907, 927 (9th Cir. 2009) ("Parties may waive their right to receive more than $10,000 in order to satisfy the Little Tucker Act and obtain jurisdiction in the district court."); *Woodard v. Marsh*, 658 F.2d 989, 992 (5th Cir. 2981) ("In his amended complaint, Woodard waived all claims for damages in excess of $9,999.99. Therefore, the district court had jurisdiction of his monetary claims."); *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001) ("A district court may permit multi-plaintiff Little Tucker Act cases to proceed when each plaintiff waives recovery in excess of $10,000, even when potential liability exceeds $10,000."); Wright & Miller, *Federal Practice and Proc.* § 3657 ("[T]he plaintiff may waive all damages over $10,000 in order to bring the claim within the district court's subject matter jurisdiction."). Similarly, district courts exercise jurisdiction over claims against the United States under the APA

where plaintiffs dismiss causes of actions that would otherwise prevent the district courts from exercising jurisdiction. *See Bennett v. Murphy*, 166 F. Supp. 3d 128, 131 (D. Mass 2016) (exercising jurisdiction under APA where "Bennett previously waived his claim for monetary damages in the form of retirement back pay and allowances; accordingly, he seeks only injunctive and declaratory relief."); *Clark v. Murphy*, No. 5:14-cv-565-FL, 2016 WL 3102016, at *3 (E.D.N.C. June 2, 2016) ("Plaintiff seeks leave to amend his complaint to waive all monetary and injunctive relief previously sought in his complaint, and to advance his arguments in support of vacating and remanding the Board's decision under the APA . . . . Plaintiff's waiver of all claims for monetary and injunctive relief reconciles his remaining claim with the jurisdiction of this court, pursuant to the APA. Accordingly, the court grants plaintiff's motion for leave to amend . . . ." (citations omitted)). The Court finds these cases persuasive and agrees with the Magistrate Judge that after waiving any right to military retirement pay, the essence of the relief Plaintiff seeks is equitable relief to alter or amend his military records for purposes other than backpay or retirement pay. Plaintiff provides a number of non-monetary benefits for which he will become eligible if he is ultimately successful, such as healthcare benefits.

Defendant argues the essence of Plaintiff's Complaint is monetary because he seeks relief based on 10 U.S.C. § 1201, a money-mandating statute. Plaintiff brings his Complaint under 10 U.S.C. § 1554a, not 10 U.S.C. § 1201, as Defendant asserts. But Defendant argues 10 U.S.C. § 1554a triggers 10 U.S.C. § 1201, such that the Complaint seeks relief for monetary benefits. While 10 U.S.C. § 1554a may implicate a money-mandating statute, § 1554a itself is not a money-mandating statute. The Federal Circuit in *Quesada v. United States*, concluded that 10 U.S.C. § 1554a is not a money-mandating statute. 136 Fed. Cl. 635 (Fed. Cir. 2018). Additionally, a Complaint does not seek monetary relief solely because it may result in monetary gain from the

government or that it may implicate a money-mandating statute. *Powe v. Secretary of Navy*, 35 F.3d 556 (4th Cir. 1994) ("[A] suit seeking a military discharge upgrade is not for money damages, even though an upgrade would entitle the recipient to payment for leave accrued at the time of discharge.").

Next, the Court of Federal Claims may only award equitable relief "in limited circumstances, when such relief is necessary to provide an entire remedy and when the injunction is 'an incident of and collateral to' an award of monetary relief." *Randall*, 95 F.3d at 346-47 (citing 28 U.S.C. § 1491(a)(2)). Since Plaintiff seeks equitable relief and the Court of Federal Claims has limited authority to provide equitable relief, the Court agrees with the Magistrate Judge that the Court of Federal Claims does not provide an adequate remedy. *See Smith v. United States*, ---Fed. Cl.---, 2022 WL 778626, at * n.5 (Fed. Cir. 2022) ("This is not to say, however, that a covered individual whose claim in this court was time-barred as of the date of his PDBR decision would have no right to judicial review in any court. Other plaintiffs have brought claims in federal district court challenging PDBR decisions under the Administrative Procedure Act."). Accordingly, this Court has jurisdiction under the APA.

### B. Summary Judgment

The APA provides for judicial review of final agency actions. 5 U.S.C. §§ 702, 704. Under the APA "[t]he reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be -- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although the court must conduct a careful review of the agency's decision, "the ultimate standard of review is a narrow one." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, (1989) (citation omitted). Moreover, the standard is highly deferential "which presumes the validity of the agency's action." *Natural Res. & Def. Council, Inc. v. Envtl.*

*Protection Agency*, 16 F.3d 1395, 1400 (4th Cir. 1993).  Courts should not reweigh the evidence, make credibility determinations, or substitute their judgment for that of the agency.  *Downey v. U.S. Dep't of the Army*, 685 Fed. App'x 184, 189 (4th Cir. 2017).  Rather, courts should determine whether the ultimate conclusion is supported by substantial evidence in the record.  *Id.* at 190.

"[A]n agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Id.*  "An action is arbitrary or capricious if 'the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Nat'l Audubon Soc. v. U.S. Army Corps of Engineers*, 991 F.3d 577, 583 (4th Cir. 2021) (quoting *Hughes River Watershed Conservancy v. Johnson*, 165 F.3d 283, 287-88 (4th Cir. 1999)).  "[S]o long as the agency provides an explanation of its decision that includes a rational connection between the facts found and the choice made, its decision should be sustained."  *Am. Whitewater v. Tidwell*, 770 F.3d 1108, 1115 (4th Cir. 2014) (quotations and citations omitted).

This standard of review is narrow and "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."  *Petri v. U.S.*, 104 Fed. Cl. 537, 550 (Fed. Cl. 2012).

The Magistrate Judge concluded the PDBR's decision was not arbitrary and capricious. Plaintiff objects and argues the PDBR's decision was arbitrary and capricious.

> 1. <u>Whether Plaintiff Was Required to Receive a Follow-Up Examination Pursuant to 38 C.F.R. § 4.129 After Being Placed On TDRL</u>

Plaintiff argues the decision is arbitrary and capricious because (1) the PDBR did not comply with 38 C.F.R. § 4.129 since Plaintiff did not undergo a follow-up examination after being

placed on TDRL and before his final date of separation; and (2) the Magistrate Judge erred by relying on *Petri v. U.S.*, 104 Fed. Cl. 537 (Fed. Cl. 2012).

Department of Defense Instruction 6040.44 requires the PDBR to conduct reviews of the disability rating in accordance with the VASRD. The VASRD provides, "[w]hen a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129. Here, pursuant to § 4.129, the PDBR constructively placed Plaintiff on TDRL for six months. Plaintiff did not undergo a follow-up examination before the PDBR's recommended final separation date in April 2006.

The purpose of the PDBR is to retroactively review certain disability determinations made between September 11, 2001 and December 31, 2009. Requiring a retroactive physical examination would effectively render the application of § 4.129 to PDBR reviews meaningless because each application of § 4.129 would require either (a) a retroactive physical examination that is impossible to complete, or (b) every person placed on TDRL to remain on TDRL for years until their disability becomes legally permanent or they undergo a physical examination ordered by the PDBR years later. Like the Magistrate Judge, the Court finds *Petri*, instructive here. 104 Fed. Cl. 537 (Fed. Cir. 2012).

In *Petri*, the court reviewed whether the PDBR's review of a former member of the Air Force was arbitrary and capricious when it recommended that the plaintiff's records be retroactively corrected to reflect a 50% disability rating for six months on TDRL, and thereafter awarded a permanent disability rating of 10%, without the plaintiff undergoing a retroactive

physical examination in the time between the TDRL and permanent discharge date. *Id.* at 549. The court analyzed the role of the PDBR, the Department of Defense Instruction and related memoranda, and ultimately concluded the PDBR board acted reasonably in assigning a permanent disability rating of 10% to the plaintiff without a new physical or mental examination after placing the plaintiff of TDRL. *Id.* at 558. The court reasoned that an examination years later would not reflect the plaintiff's state of health six months after being placed on TDRL and noted that the dependency on medical records was critical to the state of health at the time of the plaintiff's separation. *Id.* Plaintiff argues *Petri* is distinguishable because in *Petri* the plaintiff's VA disability rating was more than six months after the plaintiff was released from TDRL and the PDBR expressed concerns that the plaintiff exaggerated his symptoms to the VA. These distinctions are immaterial to the question of whether, for purposes of the PDBR retroactive review, Plaintiff was required to undergo a physical examination before being taken off TDRL.

Plaintiff also relies on *Cook v. United States*, for his position that the PDBR was required to order a physical examination before taking Plaintiff off TDRL. 123 Fed. Cl. 277 (Fed. Cl. 2015). Faced with the same issue, the *Cook* court concluded the PDBR could not remove the plaintiff from TDRL in the absence of a follow-up examination. *Id.* at 308. However, unlike *Petri*, the *Cook* court considered Army regulation and policy rather than Air Force regulation and policy. In addition, interestingly, the *Cook* court recognized that a follow-up examination is an "impossible task" but nevertheless concluded the plaintiff was required to remain on TDRL until legally his temporary disability rating became permanent after five years since a follow-up examination was not possible. *Id.* The court reasoned that "[a]llowing the Army to make a determination with such evidence (and lack of evidence) is, once again, tantamount to rewarding the Army for its own error—its failure to schedule the follow-up examination for plaintiff pursuant

to statute and regulation." *Id.* The *Petri* court's reasoning is more persuasive. As discussed, the *Cook* court's conclusion renders the application of § 4.129 meaningless in the context of retroactive reviews by the PDBR. Moreover, allowing such a determination will not "reward" the relevant military branch "for its own error" when the PDBR recommends placing individuals retroactively on TDRL years later based on legislation not in existence at the time of the individual's original separation.

In sum, the PDBR's failure to require Plaintiff to undergo a follow-up examination after being placed on TDRL and before his final date of separation was not arbitrary and capricious.

> 2. <u>Whether PDBR Properly Considered the Evidence and Reached a Conclusion Supported by Substantial Evidence</u>

Plaintiff also argues (1) the PDBR failed to consider Plaintiff's correct date of permanent disposition; (2) the PDBR failed to consider the severity of Plaintiff's condition at his permanent date of disposition; (3) the PDBR failed to consider how Plaintiff's condition could have worsened in the two months after his VA Examination but before he was permanently separated; (4) the PDBR erred in reasoning that the purposes of the MEB and VA examinations would result in different disability ratings; and (5) the PDBR's decision was not supported by substantial evidence. The thrust of these arguments is that the PDBR's decision, in places, referred to Plaintiff's date of separation in October 2005, rather than April 2006, and the PDBR failed to consider the medical examinations and Plaintiff's condition in relation to his recommended amended final date of separation of April 24, 2006.

As an initial matter, the PDBR itself recommended correcting Plaintiff's final separation date from October 2005 to April 2006, after determining he should be placed on TDRL for six months. The PDBR's decision makes clear that the PDBR considered the evidence in relation to both TDRL and final separation date in April 2006. The PDBR's decision is not arbitrary and

capricious solely because the decision referred to two medical examinations based on their relation to Plaintiff's original separation date rather than its recommended modified separation date. When explaining its conclusion, the PDBR stated "[w]ith regard to the permanent rating at the end of the constructive period of TDRL [the evidence] . . . did not approach the 50% rating." (Doc. No. 1-1 at 3). Similarly, the PDBR's decision discussed in detail the VA Examination, which was the closest examination in time to his final separation date, and indicated throughout that the PDBR considered the VA Examination in reaching its conclusion.

Plaintiff argues the PDBR failed to consider the potential worsening of his condition in the two months between the VA Examination and his final separation date in April 2006. However, the PDBR observed that records indicated "recurring/relapsing nature of [Plaintiff's] condition during which significant social and occupational impairment was likely; none were seen during the time leading up to [October 2005] or following [October 2005] up to the time of the post-separation [VA Examination]." (Doc. No. 1-1 at 4). It noted it had to make a recommendation based on the severity of the condition at the time of permanent disposition and not on future possible worsening. (*Id.*). The PDBR reviewed the evidence and reached its conclusion based on the evidence available to it, including the VA Examination. While the PDBR did not have the benefit of an examination on or immediately before or after April 24, 2006, its discussion indicates it considered the potential for Plaintiff's condition to worsen following the VA Examination, and concluded, based on the evidence, the 10% disability rating was more appropriate than 30%, which is supported by substantial evidence. Finally, the PDBR was not required to interpret the evidence in the same way or reach the same conclusion as the VA. The PDBR is charged with its own review and application of VASRD separate from the VA. Accordingly, the PDBR's decision was not arbitrary and capricious and is supported by substantial evidence.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 45), is **ADOPTED**;

2. Defendant's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the alternative, Motion for Summary Judgment, (Doc. No. 38), is **GRANTED IN PART** and **DENIED IN PART**. Specifically, its Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED** and its Motion for Summary Judgment is **GRANTED**.

4. Plaintiff's Motion for Oral Argument on the Issue of Jurisdiction, (Doc. No. 42), is **DENIED as moot**.

The Clerk is directed to close this case.

Signed: March 30, 2022

*[signature]*

Robert J. Conrad, Jr.
United States District Judge